UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

SEAN LEE STRANDBERG,

          Petitioner,               Case No. 1:16-cv-211

v.                                  Honorable Paul L. Maloney

CARMEN PALMER,

          Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Sean Lee Strandberg is presently incarcerated at the West Shoreline Correctional Facility in Muskegon Heights, Michigan. On June 10, 2011, a Muskegon County Circuit Court jury, after a three day trial, convicted Petitioner of first-degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.521b(1)(b), and three counts of second-degree criminal sexual conduct (CSC-II), based on Petitioner's molestation of his fourteen-year-old daughter. On July 6, 2011, the court sentenced Petitioner to 12 to 30 years for the CSC-I conviction, concurrent to 4 to 15 years for each CSC-II convictions.

Petitioner appealed his convictions to the Michigan Court of Appeals. The court of appeals affirmed the trial court by unpublished opinion dated September 27, 2012. *People v. Strandberg*, No. 305381, 2012 WL 4465162 (Mich. Ct. App. Sep. 6, 2012). Petitioner applied for leave to appeal to the Michigan Supreme Court. On May 29, 2013, that court denied leave. *People*

*v. Strandberg*, 830 N.W.2d 771 (Mich. 2013. Petitioner did not apply to the United States Supreme Court for a writ of certiorari.

Petitioner then returned to the Muskegon County Circuit Court, where he filed a motion for relief from judgment under MICH. CT. R. 6.500 *et seq*. claiming that Petitioner's appellate counsel was ineffective for not raising an issue as requested by Petitioner. The trial court denied the motion initially (Op. and Ord., ECF No. 12-12), and upon reconsideration (Op. and Ord., ECF No. 12-14). The Michigan Court of Appeals and Michigan Supreme Court denied Petitioner's applications for leave to appeal on December 9, 2014, (Ord., ECF No. 12-15, PageID.1242) and December 22, 2015, (Ord., ECF No. 12-16, PageID.1313), respectively.

Petitioner filed his habeas petition (ECF No. 1), on February 15, 2016, raising the following issues:

I.     The Michigan Court of Appeals holdings on the curative instruction violates Petitioner's Sixth and Fourteenth Amendment rights.

II.    Prosecutor's improper comments denied Petitioner his Sixth and Fourteenth Amendment rights.

III.   Counsel was ineffective for failing to object to prejudicial comments by the prosecutor.

(Pet., ECF No. 1, PageID.6-9.) On August 16, 2016, Respondent filed an answer to the petition, (ECF No. 11.), along with the state-court record, pursuant to Rule 5, Rules Governing § 2254 Cases,

(ECF No. 12).[1]   Petitioner filed his reply on September 28, 2016.  (ECF No. 16.)  Petitioner has also

filed a motion to stay proceedings and hold his petition in abeyance. (ECF No. 14.)

Upon review and applying the standards required by the Antiterrorism and Effective

Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA), I find that Petitioner's

claims are without merit.  Accordingly, I recommend that the petition and the motion to stay

proceedings be denied.

## Factual background

Petitioner's fourteen-year-old daughter testified that, during the summer of 2010,

Petitioner squeezed her breasts on several occasions (Trial Tr. I, ECF No. 12-4, PageID.502-505),

inserted his penis between her labia majora while they were in a swimming pool (*Id*., PageID.505-

513), inserted his penis between her butt cheeks while they were in a swimming pool (*Id*.,

PageID.513-517), and groped her vaginal area while they were riding a "quad" (*Id*., PageID.517-

518).

On the last day of testimony, Child Protective Services Specialist Erin Matuz testified

regarding her investigation of the allegations against Petitioner.  (Trial Tr. III, ECF No. 12-6,

PageID.720-750.)  The investigation included the initial interview of Petitioner's daughter.  (*Id*.)

defense counsel's cross-examination of Ms. Matuz included the following exchange:

---

[1]The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be
referenced as follows:

| | |
|---|---|
| Preliminary Examination Transcript | (Prelim. Examination Tr., ECF No. 12-2, PageID.__) |
| June 6, 2011 Motion Hearing Transcript | (Mot. Hr'g Tr., ECF No. 12-3, PageID.__) |
| June 7, 2011 Trial Transcript (Volume 1) | (Trial Tr. I,  ECF No. 12-4, PageID.__) |
| June 8, 2011 Trial Transcript  (Volume 2) | (Trial Tr. II, ECF No. 12-5, PageID.__) |
| June 9, 2011 Trial Transcript  (Volume 3) | (Trial Tr. III, ECF No. 12-6, PageID.__) |
| June 10, 2011 Trial Transcript (Volume 4) | (Trial Tr. IV, ECF No. 12-7, PageID.__) |
| July 6, 2011 Sentencing Transcript | (Sentencing Tr., ECF No. 12-8, PageID.__). |

| | |
|---|---|
| Petitioner's counsel: | Is it because you don't like Mr. Strandberg? |
| Ms. Matuz: | I've never met him prior to this. |
| Petitioner's counsel: | Another interesting point. You didn't do an investigation and talk to the person who is being accused of child abuse and neglect? |
| Ms. Matuz: | As stated previously, the investigation was coordinated with the Muskegon County Sheriff's Department and as part of the investigation, he absolutely was interviewed. He was offered a polygraph as well. |
| Petitioner's counsel: | Well, Judge- |
| The Court: | Next question. |

(Trial Tr. III, ECF No. 12-6, PageID.733-734.) When Ms. Matuz's testimony was complete, the jury was excused and the trial court immediately addressed the reference to the polygraph. (*Id.*, PageID.750.) Petitioner's counsel requested a mistrial. (*Id.*, PageID.750-751.) The trial court concluded the reference was not a willful violation of Michigan's evidentiary prohibition against the introduction of polygraph evidence. (*Id.*, PageID.750-758.) Accordingly, the trial court denied the mistrial request and, instead, decided to read a curative instruction. (*Id.*, PageID.758-764.) The court and Petitioner's counsel crafted this curative instruction:

> Now the other thing I have to talk to you about is a part of Ms. Matuz's testimony though. I need to talk about her testimony when she mentioned the word polygraph. Frankly that was a mistake by her. For that reason, I'm ordering you to disregard it. And to not consider it for any purpose in the case. It's all really completely irrelevant to anything you have to decide. And I told you before, I try not to keep secrets from you and so here are my reasons for saying it. Number one, is that even if Mr. Strandberg took one, we don't allow them into evidence in court cases. I mean, people can use them on TV and things like that. But under Michigan Law, they don't, they're insufficiently reliable. So even if one was taken, you wouldn't ever hear the results anyway. You are the persons who assess witness credibility and the weight to be given to everybody's testimony. The second reason is this. You might have surmised that there may be some other proceedings affecting the family in some

other court. And I don't have a clue about any of this negotiations about polygraph stuff or anything like that. Mr. Strandberg has no obligation to take one, even if it was offered. And if I let the attorneys get into who's going to take one or who wasn't or who was going to be there or where they were going to do it. And then we'd just spend two more days working on that. So that really gets us off on a sideshow that really is irrelevant to anything we have to do. So I thought I need to talk to you about that. So do you have any questions about that? Alright. Just take one of those things like that Men in Black movie and just flashy thing and just take it out of your memory and I'm confident you can do that.

(*Id.*, PageID.768-769.)

### Discussion

This action is governed by the AEDPA. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d

at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v.*

*Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

I.    Motion to stay

Petitioner has filed a motion to stay these proceedings and hold them in abeyance so

that he might return to the state courts to exhaust new claims based on newly discovered evidence.

The relief requested by Petitioner was authorized by the Supreme Court in *Rhines v. Weber*, 544 U.S.

269 (2005), but "only in limited circumstances." *Id.*, at 277.[2]  Under *Rhines*,  a district court may,

in its discretion, stay the mixed petition pending prompt exhaustion of state remedies if there is

"good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not

"plainly meritless" and if there is no indication that the petitioner engaged in "intentionally dilatory

litigation tactics." *Rhines.* at 278.

Petitioner proposes a return to the state courts based on "newly discovered evidence"

that will demonstrate:

1.    The complainant's claim that she went to bed early to avoid the defendant
during the relevant time frame is false.  Petitioner has evidence that shows the
complainant was up way after Petitioner went to bed.

2.    The complainant's claim that Petitioner would make the family leave the
Christmas Eve party at her great grandmother's house early, at about 6:30 to

---

[2]It is worthy of note that Petitioner's situation is not the situation for which the *Rhines* Court created the stay
and abeyance remedy.  The *Rhines* Court created the remedy for petitioners who filed petitions containing exhausted <u>and</u>
unexhausted claims, known as mixed petitions.  Petitioner's petition includes only exhausted claims.  The claims he now
wishes to raise in the state court are new claims that are not presently part of his petition.  Another district court in this
circuit has concluded that *Rhines* should be applied even where the unexhausted claims are not presently part of the
petition. *See Phillips v. Warden, Nobles Corr. Inst.*, No. 2:16-cv-00763, 2017 WL 1419985 (S.D. Ohio Apr. 21, 2017).
This Court will proceed accordingly.

7:00 p.m. is false.  Petitioner has evidence that they never left until after 9:00 p.m.

3.  The statement in complainant's written message to Petitioner's niece that complainant was afraid of men since she was nine-months old is false. Petitioner has evidence that the complainant is currently not afraid of men.

(Pet.'s Br., ECF No. 14, PageID.1406.)  Petitioner indicates the first two "false" statements were made in letters to the trial court judge from the complainant and her mother, written in connection with Petitioner's sentencing.  (ECF No. 14-1, PageID.1424-1425.)  The third "false" statement was purportedly made in an exchange between the complainant and her cousin regarding the "false" statements the complainant's mother wrote in her letter to the judge.  (ECF No. 14-1, PageID.1419-1421.) Petitioner "proves" the falsity of the statements by attaching his own handwritten statement, as well as handwritten statements from his relatives, that simply contend the earlier statements are false.  (ECF No. 14-1, PageID.1413-1418, 1422-1423, 1426-1427.)

There is nothing in the handwritten statements of Petitioner or his family that constitutes proof of anything relevant to the jury's conviction of Petitioner on the CSC charges. Neither the letters, nor the allegedly false statements in them, nor the subject matter of those statements, were any part of the trial.  They were not introduced as exhibits at Petitioner's trial; indeed, they could not have been introduced because they did not even exist yet.  Nor is any of the evidence "new."  The statements relate to facts that preceded the trial and sentencing.  Petitioner's family members testified at trial.  If the matters bore any relevance whatsoever to the determination of Petitioner's guilt, Petitioner could have simply solicited the information contained in the handwritten statements at that time.

The only conceivable benefit Petitioner's "newly discovered evidence" might afford him, would be if it demonstrated Petitioner were actually innocent. Even then, under the circumstances here, Petitioner could only use that showing to overcome a procedural bar to some other habeas claim. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." But the *Herrera* Court did not close the door completely, stating in dicta: "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "[I]n an extraordinary case,

where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review. *See Cress*, 484 F.3d at 854 (citing cases). Because the Supreme Court has never recognized a free-standing claim of actual innocence, Petitioner is not entitled to habeas relief on that ground. Moreover, even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not,

in fact, a capital case."). Petitioner, therefore, cannot obtain habeas corpus relief on his freestanding claim of actual innocence.

Because the new claim Petitioner seeks to exhaust would not entitle him to habeas relief, he is not entitled to a stay during the pendency of his efforts to exhaust the claim in state court. *Rhines*, 544 U.S. at 277 (holding that granting stay and abeyance requires the presentation of a non-frivolous claim).

II.     The curative instruction for the "polygraph" reference

Turning to the Petitioner's habeas claims that are properly before the Court, Petitioner contends first that Ms. Matuz's reference to the polygraph rendered his trial fundamentally unfair. The Michigan Court of Appeals carefully reviewed Petitioner's claim that he was prejudiced by the witness' reference:

> It is plain error to reference a polygraph test or a defendant's refusal to take a polygraph. *People v. McGhee*, 709 N.W.2d 595, 616 (Mich. Ct. App. 2005); *People v. Kahley*, 744 N.W.2d 194, 196 n.1 (Mich. Ct. App. 2007). However, although reference to a polygraph examination is always error, it is not necessarily error that requires a mistrial. *People v. Ortiz–Kehoe*, 603 N.W.2d 802, 806 (Mich. Ct. App. 1999). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id.* at 806. In deciding whether a mistrial is an appropriate remedy for the mention of a polygraph, we may consider:
>
> > (1) [W]hether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster the witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted.
>
> *Id.*, citing *People v. Yatooma*, 271 N.W.2d 184, 186-187 (Mich. Ct. App. 1978). Here, because defendant objected and received a cautionary instruction, the first factor weighs in defendant's favor. *Id.* However, the second factor favors the prosecution because the witness's reference to the polygraph examination was an

- 11 -

inadvertent misstep by one witness, unrelated to any efforts by the prosecution to place the information before the jury.

\* \* \*

Having viewed the [witness's] testimony in its entirety, the trial court determined the answer was responsive to the question posed by defense counsel. A trial court's finding of fact may not be set aside unless "clearly erroneous." MICH. CT. R. 2.613(C). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v. Antwine*, 809 N.W.2d 439, 440 (Mich. Ct. App. 2011). Given that the witness explained early in her testimony that her investigation was coordinated with law enforcement, defense counsel's questions about the investigation and defendant's opportunity to "talk" could reasonably be taken as inviting commentary on the investigation generally. As such, we cannot conclude that the trial court's finding that her answer was responsive was clearly erroneous. Mich. Ct. R. 2.613(C).

\* \* \*

The third factor also weighs in favor of the prosecution because there was only one, brief reference to the polygraph examination. The fourth factor favors the prosecution because the witness did not mention the polygraph to enhance her credibility but to confirm that defendant had been investigated and provided an opportunity to speak on the allegations. There was no argument made to suggest that the polygraph had any bearing on credibility or truthfulness. Finally, the fifth factor also weighs in favor of the prosecution because the results of a polygraph examination were not introduced into evidence. Indeed, from the witness' statement, it is not even apparent if defendant submitted to a polygraph test. On the whole, it cannot be said the trial court erred in denying defendant's motion for a mistrial. This conclusion is supported by the trial court's thorough curative instructions which informed the jury that polygraphs were unreliable and inadmissible. The jurors were also told they could not consider the polygraph for "any purpose." "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Abraham*, 662 N.W.2d 836, 845 (Mich. Ct. App. 2003). Here, any potential harm to defendant was cured by the court's thorough instructions. *Ortiz–Kehoe*, 603 N.W.2d at 807.

*Strandberg,* 2012 WL 4465612 at *1-2 (parallel citations omitted).

The Michigan Court of Appeals looked solely to state law to resolve the claim as

Petitioner raised it on his direct appeal. The state court's conclusions that: (1) admission of the

reference was error as a matter of state law and (2) the error did not warrant a mistrial as a matter of state law; are binding upon this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

Because it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions, *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68, this Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard. As the Sixth Circuit Court of Appeals explained in *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005):

> The Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. Further, we are aware of no federal court of appeals that has found a due process violation warranting a grant of habeas relief under these facts. Indeed, three circuits have rejected habeas petitioners' claims that testimony about truth testing violated the petitioners' due process rights. Notably, two reached this conclusion under pre-AEDPA de novo review. *Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir.2001) (AEDPA deference); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir.1994) (de novo review); *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir.1991) (de novo review). While these cases are distinguishable from the present one in important respects, they do not imply that testimony regarding truth testing violates due process. Finding a due process violation here would necessarily imply that the Constitution requires all states to have rules of evidence precluding some testimony

about truth tests. No Supreme Court precedent demands this result, and the state court's decision therefore was not unreasonable under 28 U.S.C. § 2254(d).

*Maldonado*, 416 F.3d at 477-478 (footnote omitted). Although a decade has passed since the *Maldonado* decision, it remains the case that the Supreme Court has never held that reference to a polygraph test renders a trial fundamentally unfair. Put simply, Petitioner has failed to demonstrate that the state court's decision is contrary to or an unreasonable application of clearly established federal law. He has similarly failed to show that the factual determinations upon which the state court's decision are based are unreasonable on this record. Accordingly, Petitioner is not entitled to habeas relief.

III.    Prosecutorial misconduct

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See*

*id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (internal quotation omitted).

Petitioner takes issue with two types of prosecutorial misconduct: (1) the prosecutor vouched for the victim's credibility; and (2) the prosecutor argued facts not in evidence. Each contention is addressed below.

A.    Vouching

The Sixth Circuit has generally recognized two types of objectionable vouching. *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching as part of a

single standard).[3]  The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility.  *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).  In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965);  *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).

Petitioner complains that the prosecutor impermissibly vouched and/or bolstered when he argued that if the victim was telling a lie, she told "a giant, awful, whopper of a lie . . . ." (Trial Tr. IV, ECF No. 12-6, PageID.858.)  The Michigan Court of Appeals concluded the argument was not misconduct:

> Defendant first argues that the prosecutor impermissibly vouched for the victim's credibility.  It is well recognized that "the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness."  *People v. Bahoda*, 531 N.W.2d 659, 667 (Mich. 1995).  However, a prosecutor may argue, based on the facts and testimony presented, that a witness is worthy of belief.  *People v. Dobek*, 732 N.W.2d 546, 556 (Mich. Ct. App. 2007). A review of the record reveals that the prosecutor did not claim special knowledge of the victim's veracity, instead, based on facts before the jury, the prosecutor argued that the victim was worthy of belief.  This was not misconduct. *Id.*

---

[3]Notwithstanding the Sixth Circuit's continuing application of its own precedent on vouching, *see Wogenstahl*, 668 F.3d at 328 29 (citing *Johnson v. Bell*, 525 F.2d 466, 482 (6th Cir. 2008)), the Supreme Court has not directly held that vouching amounts to prosecutorial misconduct.  Given the Supreme Court's recent admonitions to the courts regarding the limits of clearly established general principles, it is doubtful that vouching has been clearly established by the Supreme Court as a due process violation.  *See, e.g., Lopez v, Smith*, 135 S. Ct. 1, 3 (2014) (holding, with respect to a claim of self-representation, that "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshal v. Rodgers*, 133 S. Ct. 1446, 1450 (2013); *White v. Woodall,* 134 S. Ct. 1697, 1703 (2014) (same, respecting a claim regarding the privilege against self-incrimination); *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) ("The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here.").

*Strandberg*, 2012 WL 4465162 at *5. Close examination of the prosecutor's closing argument supports the Michigan Court of Appeals' determination. The prosecutor reviewed the victim's testimony and the circumstances surrounding her claims to support his argument that her testimony was worthy of belief. The state court's conclusion that such argument is not objectionable is in no way contrary to clearly established federal law. Petitioner has failed to establish entitlement to habeas relief on this claim.

### B. Arguing facts not in evidence

Petitioner contends that the prosecutor made statements of fact in his arguments that were not supported by record evidence. Specifically, Petitioner claims: (1) the prosecutor told the jury that Petitioner confessed based on what Petitioner had said in a recorded interview with police, an interview that was played for the jury (Trial Tr. III, ECF No. 12-6, PageID.864-867, 888-891); and (2) the prosecutor improperly told the jury that the defense argument regarding the impossibility of first-degree criminal sexual conduct was unsupported by the evidence when it was supported.[4]

"It is improper for a prosecutor, during closing arguments, to bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial'" *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (citing *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)). Nonetheless, "prosecutors 'must be given leeway to argue reasonable inferences from the evidence.'" *Id.* (citing *United States v. Collins*, 78 F.3d 10021, 1040 (6th Cir. 1996)).

_____

[4]Petitioner's "impossibility" defense was premised on his assertion that Petitioner could not have committed the act as the victim testified because it occurred in a swimming pool. Defense counsel argued that if, as the victim testified, Petitioner had bent her forward to insert his penis between her labia majora, the victim would have been underwater. (Trial Tr. III, ECF No. 12-6, PageID.879-883.) The prosecutor responded by noting it was not clear from the testimony how far Petitioner had bent the victim forward. (Id., PageID.884-885.) Petitioner claims the testimony supports the argument.

The Michigan Court of Appeals resolved Petitioner's prosecutorial misconduct claims

as follows:

> Next, defendant argues that the prosecution argued facts not in evidence. As a matter of law, [the] prosecutor may not "mischaracterize the evidence presented," *People v. Watson*, 629 N.W.2d 411, 422 (Mich. Ct. App. 2001), or "argue a fact to the jury that is not supported by evidence," [*People v. Callon*, 662 N.W.2d 501, 513 (Mich. Ct. App. 2003)]. However, "a prosecutor is free to argue the evidence and any reasonable inferences that may arise from the evidence." *Id.* Defendant presents numerous statements from the prosecution that he claims were not based on the evidence. Having reviewed the record, we conclude the majority of the statements referenced by defendant were correct statements of the evidence or reasonable inferences arising from the evidence. As such, they do not constitute prosecutorial misconduct. *Id.* However, we agree with defendant that the prosecutor misstated testimony by suggesting defendant's wife removed the victim from the home for two or three days after she learned of the abuse and that the victim told a friend about the abuse weeks before she revealed the abuse to anyone else. The record shows that defendant's wife returned to the family home one day after learning of the abuse and that the victim's friend could not remember precisely when the victim disclosed the abuse. However, defendant has not shown how such misstatements (or any of his claimed prosecutorial misstatements) altered the outcome of the proceedings. [*People v. Carines*, 597 N.W.2d 130, 139 (Mich. 1999)]. Moreover, to the extent the prosecution misstated a fact, the jury was instructed to rely on the evidence and specifically informed that the "the lawyers statements and arguments are evidence." Any potential prejudice arising from the prosecution's statements was cured by the jury instructions. *People v. Unger*, 749 N.W.2d 272, 292 (Mich. Ct. App. 2008).

*Strandberg*, 2012 WL 4465162 at *5.[5]

The standard applied by the state court was entirely consistent with clearly established federal law. Moreover, the state court's factual determinations are entirely reasonable on this record. Petitioner's contention that the prosecutor treated the recorded interview like a confession finds no support in the record. The prosecutor did the opposite, stating "this is not . . . what we call a confession" and "[w]e didn't produce this statement as a confession" and "I'm not saying this is a

---

[5]In Petitioner's habeas petition and supporting brief, he raises only the two instances of arguing facts not in evidence identified above. He does not raise the issue regarding the duration of the victim's removal from the family home in this Court.

confession." (Trial Tr. III, ECF No. 12-6, PageID.865.)[6]  The record also supports the conclusion

that the prosecutor's argument regarding "impossibility" was simply encouraging the jury to draw

fair inferences from the testimony.  The fact that the prosecutor, relying on the same evidence, asked

the jury to draw an inference contrary to the inference advocated by defense counsel, does not render

the prosecutor's argument improper.  Petitioner's prosecutorial misconduct claim is without merit.

IV.    Ineffective assistance of trial counsel

Petitioner maintains that his trial counsel rendered ineffective assistance in violation

of the Sixth Amendment when he failed to object to the instances of prosecutorial misconduct

identified above.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court

established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To

establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's

performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

A court considering a claim of ineffective assistance must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The

defendant bears the burden of overcoming the presumption that the challenged action might be

considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also*

*Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions

were hard to attack).  The court must determine whether, in light of the circumstances as they existed

at the time of counsel's actions, "the identified acts or omissions were outside the wide range of

---

[6]The prosecutor likened Petitioner's statement in a draft letter to the victim that she did nothing bad or wrong to a confession that she was not lying; but that is not the argument that Petitioner claims rose to the level of unconstitutional prosecutorial misconduct.  (Trial Tr. III, ECF No. 12-6, PageID.867.)

- 19 -

professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals rejected Petitioner's ineffective assistance claim:

> Defendant also argues that counsel was ineffective for failing to object to statements made by the prosecution during closing arguments. As discussed, the majority of the prosecution's statements were proper argument that the victim was worthy of belief, [*People v. Dobek*, 732 N.W.2d 546, 556 (Mich. Ct. App. 2007)], permissible arguments or reasonable inferences arising from the evidence, [*People v. Callon*, 662 N.W.2d 501, 513 (Mich. Ct. App. 2003)]. . . . Objection to these proper statements would have been futile, and defense counsel was not ineffective for failing to raise such meritless objections. [*People v. Snider*, 608 N.W.2d 502, 517 (Mich. Ct. App. 2000); *People v. Thomas*, 678 N.W.2d 631, 636-637 (Mich. Ct. App. 2004)].

*Strandberg*, 2012 WL 4465162 at *7. The state court's determination is neither contrary to nor an unreasonable application of *Strickland*. As the Michigan Court of Appeals recognized, counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel. *See Smith v.*

*Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner is not entitled to habeas relief.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that Petitioner's motion to stay and abey these proceedings be denied and that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. See *Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated: May 18, 2017                    /s/ Ray Kent
                                       RAY KENT
                                       United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).